**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| LUZ LOJA and MOISES QUIRINO, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>                    Plaintiffs,<br><br>    v.<br><br>TABERNACLE, LLC,<br>        d/b/a TABERNACLE STEAKHOUSE<br>KENNETH ROZENBERG,<br>BETH ROZENBERG, and<br>DARYL HAGLER,<br><br>                    Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

---

        Plaintiffs, LUZ LOJA and MOISES QUIRINO (hereinafter, "Plaintiffs"), on behalf of

themselves and others similarly situated, by and through their undersigned attorneys, hereby file

this Class and Collective Action Complaint against Defendants TABERNACLE, LLC, d/b/a

TABERNACLE STEAKHOUSE (the "Corporate Defendant"), KENNETH ROZENBERG,

BETH ROZENBERG, and DARYL HAGLER ("Individual Defendants") (each individually,

"Defendant" or, collectively, "Defendants") and states as follows:

1

## INTRODUCTION

1.      Plaintiffs allege, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that Plaintiffs, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (i) unpaid wages, including overtime, due to time shaving, (ii) unpaid overtime premiums due to fixed salary, (iii) unlawfully retained gratuities due to an invalid tip pooling policy,  (iv) liquidated damages, and (v) attorney's fees and costs.

2.      Plaintiffs further allege that, pursuant to New York Labor Law ("NYLL"), Plaintiffs and others similarly situated are entitled to recover from Defendants: (i) unpaid wages due to Defendants' invalid tip credit, (ii) unpaid wages, including overtime, due to time shaving, (iii) unpaid overtime premiums due to fixed salary, (iv) unlawfully retained gratuities due to an invalid tip pooling policy, (v) unpaid spread of hours premium, (vi) statutory penalties, (vii) liquidated damages, and (viii) attorney's fees and costs.

3.      Plaintiff LUZ LOJA ("Plaintiff LOJA") additionally alleges on an individual basis that she was deprived of her statutory rights as a result of Defendants' (i) sexual harassment, (ii) unlawful discrimination practices based on race and gender, and (iii) unlawful retaliation against her by the Defendants, in violation of the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL") and brings this action against Defendants to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy, pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      At all relevant times herein, Plaintiff, LUZ LOJA, was and is a resident of Bronx County, New York.

7.      At all relevant times herein, Plaintiff, MOISES QUIRINO, was and is a resident of New York County, New York.

8.      Individual Defendants collectively own and operate TABERNACLE, LLC, d/b/a TABERNACLE STEAKHOUSE, a restaurant (the "Restaurant") located at 315 W 36th Street, New York, NY 10018.

9.      Corporate Defendant, TABERNACLE, LLC ("TABERNACLE"), is a domestic business corporation organized under the laws of New York, with a principal place of business at 315 W 36th Street, New York, NY 10018 and an address for service of process at 4770 White Plains Road, Bronx, NY 10470.

10.      Individual Defendant KENNETH ROZENBERG is a co-owner and executive officer of Corporate Defendant. KENNETH ROZENBERG exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class members. KENNETH ROZENBERG exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees

3

including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class members. At all times, employees of the Restaurant could complain to KENNETH ROZENBERG directly regarding any of the terms of their employment, and KENNETH ROZENBERG would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. KENNETH ROZENBERG exercised functional control over the business and financial operations of all Corporate Defendant. KENNETH ROZENBERG had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

11.     Individual Defendant BETH ROZENBERG is a co-owner and executive officer of Corporate Defendant. BETH ROZENBERG exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class members. BETH ROZENBERG exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class members. At all times, employees of the Restaurant could complain to BETH ROZENBERG directly regarding any of the terms of their employment, and BETH ROZENBERG would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. BETH ROZENBERG exercised functional control over the business and financial operations of all Corporate Defendant. BETH ROZENBERG had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

12.     Individual Defendant DARYL HAGLER is a co-owner and executive officer of Corporate Defendant. DARYL HAGLER exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class members. DARYL HAGLER exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class members. At all times, employees of the Restaurant could complain to DARYL HAGLER directly regarding any of the terms of their employment, and DARYL HAGLER would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. DARYL HAGLER exercised functional control over the business and financial operations of all Corporate Defendant. DARYL HAGLER had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

13.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

14.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

15.     At all relevant times, Plaintiffs were Defendants' employees within the meaning of NYLL §§ 2 and 651. At all relevant times, Defendants were Plaintiffs' employers within the meaning of NYLL §§ 2 and 651.

16.     At all relevant times, Defendants employed at least forty (40) employees as defined under the NYLL.

5

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, waiters, servers, bartenders, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

18.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs for: (i) unpaid wages, including overtime, due to timeshaving, (ii) liquidated damages, and (iii) attorney's fees and costs. Further, with respect to tipped employees ("Tipped FLSA Collective Plaintiffs"), Defendants were not entitled to retain all or part of the gratuities which Tipped Plaintiffs and Tipped FLSA Collective Plaintiffs are entitled to. Additionally, with respect to fixed salary employees ("Salaried FLSA Collective Plaintiffs"), they are owed unpaid overtime premiums due to being paid a fixed salary without any overtime compensation.

19.    The claims for relief are properly brought under and maintained as an opt-in collective pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. The number and identity of the FLSA Collective Plaintiffs are able to be determined from the records of Defendants. The hours assigned and worked, the positions held, and rates of

pay for each FLSA Collective Plaintiff are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily ascertainable from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

20.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including, but not limited to, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

21.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty (40) members of the Class. The Class further includes the following subclasses:

- Timeshaved Subclass – this Subclass comprise of non-exempt employees who were paid on an hourly basis but were not paid for all their hours worked due to Defendants' policy of timeshaving. Plaintiffs are members of the Timeshaved Subclass. The Timeshaved Subclass also number more than forty (40).

- Salaried Subclass – this Subclass comprise of non-exempt employees who were paid on a salary basis without any overtime compensation. Plaintiff QUIRINO is part of the Salaried Subclass for the period that he was paid on salary basis. The Salaried Subclass also number more than forty (40).

- Tipped Subclass – this Subclass comprise of non-exempt tipped employees. Plaintiff LOJA is a member of the Tipped Subclass. The Salaried Subclass also number more than forty (40).

23.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay spread of hours premium for each workday that exceeded ten (10) or more hours, (ii) failing to provide proper wage and hour notices to Class Members upon hiring and as legally required thereafter, and (iii) failing to provide proper wage statements for each payment period.

24.    With regard to the Timeshaved Subclass, Defendants failed to pay proper wages, including overtime, due to their timeshaving policy.

25.    With regard to the Salaried Subclass, Defendants failed to pay overtime premiums due to compensating the Plaintiff Quirino and the Salaried Subclass on a salary basis without overtime compensation.

26.     With regard to the Tipped Subclass, Defendants failed to pay the proper minimum wage as they were not entitled to claim any tip credit because they failed to meet statutory requirements under NYLL. Plaintiff LOJA and Tipped Subclass members similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to provide proper tip credit notice at hiring and annually thereafter (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed a tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes, (iv) implemented an invalid tip pooling scheme, (v) illegally retained tips, and (vi) failed to keep track of daily tips earned and maintain records thereof.

27.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

28.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against the corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.    Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

i.    Whether Defendants employed Plaintiffs and the Class within the meaning of New York Labor Law and applicable state laws;

ii.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and Class members;

iii.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class members for their work;

iv.    Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

v.    Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class members spread of hours premiums, as required under NYLL;

vi.    Whether Defendants operated their business with a policy of failing to provide Plaintiff QUIRINO and Salaried Subclass overtime premiums, due to fixed salary;

vii.    Whether Defendants operated their business with a policy of failing to provide compensation for all hours worked due to a policy of time-shaving Plaintiffs and the Timeshaved Subclass;

viii.    Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit; and

ix.    Whether Defendants provided proper tip credit notice at hiring and annually thereafter.

x.    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding twenty percent (20%) of their work shift;

xi.    Whether Defendants claimed tip credit for any continuous periods of time of

11

nontipped, directly supporting work exceeding 30 minutes;

xii.    Whether Defendants illegally retained gratuities of Plaintiff LOJA and Tipped

Subclass;

xiii.    Whether Defendants accurately tracked the amounts of tips earned each day and

maintained records thereof;

xiv.    Whether Defendants provided proper wage and hour notices to Plaintiffs and the

Class members, including, among others, the rate of compensation, overtime rate,

trade name of employer, pursuant to the requirements of NYLL;

xv.    Whether Defendants provided proper wage notice, at date of hiring and annually

thereafter, to all non-exempt employees, per requirements of NYLL; and

xvi.    Whether Defendants provided Plaintiffs and Class Members proper wage

statements with each payment of wages, as required under NYLL.

## STATEMENT OF FACTS

*Plaintiff LUZ LOJA*

32.    In or about May 2020, Plaintiff LOJA was hired by Defendants to work as a food
runner for Defendants' Tabernacle Steakhouse located at 315 W 36th Street, New York, NY 10018.
Plaintiff LOJA was employed by Defendants until on or about July 2, 2023, when her employment
was terminated by Defendants when Plaintiff complained about being sexually harassed as
explained in detail below.

33.    Throughout her employment, Plaintiff LOJA was compensated at ten dollars
($10.00) per hour, or the tip credit minimum wage rate. Similarly, Tipped FLSA Collective
Plaintiffs and Tipped Subclass were compensated at a tip credit wage.

12

34.     From the start of her employment until about February 2023, Plaintiff LOJA was regularly scheduled to work five (5) days per week, Mondays to Fridays either from 3:00 p.m. to 10:00 p.m. or 5:00 p.m. to 11:00 p.m. for a total of 30 to 35 hours per week. When the new management came in February 2023, her schedule was reduced to three (3) days per week with the same hours for a total of 18 to 21 hours per week. Plaintiff LOJA was also required to work double shifts at least once a week.

*Plaintiff MOSES QUIRINO*

35.     In or about July 2020, Plaintiff MOISES QUIRINO ("Plaintiff QUIRINO") was hired by Defendants to work as a chef for Defendants' Tabernacle Steakhouse located at 315 W 36th Street, New York, NY 10018. Plaintiff was employed by Defendants until on or about July 2, 2023, when his employment was terminated by Defendants.

36.     Throughout his employment, Plaintiff QUIRINO was regularly scheduled to work five (5) days per week, Mondays to Thursdays and Sundays from 3:00 p.m. to 12:00 a.m., for a total of forty-five (45) hours per week.

37.     From the start of his employment through October 2021, Plaintiff QUIRINO was paid at hourly rate of twenty-two dollars ($22.00). Afterwards, Plaintiff QUIRINO was compensated at a fixed salary of sixty-five thousand dollars ($ 65,000) per year regardless of how many hours he worked each workweek.

**_Timeshaving Claims_**

38.     Throughout her employment, Plaintiff LOJA was required to work through her meal breaks about once a week. When Plaintiff QUIRINO was paid on an hourly basis, he was also required to work through his meal break at least once a week. Despite being required to work through their meal breaks, Defendants automatically and improperly deducted a thirty-minute meal

break from their paystubs. Similarly, FLSA Collective Plaintiffs and Timeshaved Subclass were regularly required to work through their meal breaks but were automatically and improperly deducted 30-minute meal break from their paystubs.

### Salaried FLSA Collective Plaintiffs' and Salaried Subclass' Claims

39.    When Plaintiff QUIRINO started to be paid on a salary basis, he was not compensated overtime premiums for the hours he worked in excess of forty (40) hours in each workweek. Similarly, Salaried FLSA Collective Plaintiffs and Salaried Subclass who were similarly paid on a fixed salary basis were not paid any overtime premium for all hours worked over forty (40) each week.

40.    Throughout his employment, there was never any agreement that Plaintiff QUIRINO's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, Salaried FLSA Collective Plaintiffs and Salaried Subclass never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

### Tipped FLSA Collective Plaintiffs' and Tipped Subclass' Claims

41.    Plaintiff LOJA was paid below the minimum wage at an invalid "tip credit" minimum wage rate. Defendants were not entitled to claim any tip credit allowance under NYLL because Defendants: (i) failed to provide proper tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or twenty (20%) of the total hours worked each shift; (iii) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding thirty (30) minutes; (iv) failed to accurately keep track of daily tips earned and maintain records thereof; (v) illegally retained tips; and (iv) implementing an invalid tip pool. Similarly,

Defendants are not entitled to claim any tip credit allowance from the Tipped FLSA Collective Plaintiffs and the Tipped Subclass.

42.     Plaintiff LOJA received an improper tip credit notice upon hiring, as the tip credit notice provided to her was not in her primary language which is Spanish. Similarly, the Tipped FLSA Collective Plaintiffs and the Tipped Subclass did not receive proper tip credit notices as required by the FLSA and the NYLL.

43.     Plaintiff LOJA was required to engage in at least two (2) hours or more than twenty percent (20%) of his working time in non-tipped related activities, including but not limited to, cleaning the restaurant, sweeping and mopping the floor, polishing glass, silverware, and plates, dishwashing, performing barista duties, and preparing bread (hereinafter the "non-tipped duties"). Similarly, Tipped FLSA Collective Plaintiffs and the Tipped Subclass members spent an average of two (2) hours or twenty percent (20%) of the total hours worked each shift on non-tipped duties. Despite Plaintiff LOJA, Tipped FLSA Collective Plaintiffs and the Tipped Subclass engaging in at least two (2) hours of non-tipped work, Defendants improperly claimed tip credit for all hours worked by the Plaintiffs.

44.     Additionally, Defendants improperly claimed a tip credit for all continuous periods of time of Plaintiff LOJA's non-tipped, directly supporting work exceeding 30 minutes. Similarly, Defendants improperly claimed tip credit for all continuous periods of time of Tipped FLSA Collective Plaintiffs' and the Tipped Subclass' non-tipped, directly supporting work exceeding 30 minutes.

45.     Throughout Plaintiff LOJA's employment, there was no tip sheet to verify that she and other tipped employees received the correct amount of tips. The distribution of the tips was

under the complete control of Defendants and the Tipped FLSA Collective Plaintiffs and Tipped

Subclass members were not provided with tip sheets.

46.    Defendants failed to maintain proper tip records that include (i) a daily log of the

tips collected by employees, (ii) a list of the occupations and employees eligible to participate in

the tip pool, (iii) the shares of tips that each occupation is scheduled to receive, and (iv) the amount

in tips that each employee receives from the tip share or tip pool.

47.    At all relevant times, Defendants illegally retained gratuities. In or around February

2023, new management took over. The new manager, Peter [Last Name Unknown or "LNU'] hired

his friend to be captain who makes an average of two thousand five hundred dollars ($ 2,500.00)

in tips per week while Plaintiff LOJA was only given about one hundred fifty dollars ($ 150.00)

in tips per week. Before the change in management, Plaintiff LOJA would make from $600 to over

a thousand dollars per week in tips (except for week where Plaintiff LOJA worked less than twenty

hours per week). Additionally, starting January 2023, Plaintiff LOJA and the Tipped FLSA

Collective Plaintiffs and Tipped Subclass stopped receiving cash tips. No one asked where the

cash tips go in fear of being reprimanded or terminated. Moreover, whenever there are events or

buyouts, Defendants keep all the tips because "the restaurant needs the money." Similarly, Tipped

FLSA Collective Plaintiffs and Tipped Subclass were never properly paid gratuities to which they

are entitled.

### *Class Members' Claims*

48.    Throughout her employment, Plaintiff LOJA worked double shifts at least once a

week. Despite working double shifts or shifts exceeding ten (10) hours per day, she was not

compensated for all spread of hours premium that she was entitled to. Similarly, Class members

regularly worked shifts exceeding ten (10) hours in duration and were not paid proper spread of hours premium.

49.     Moreover, Defendants implemented a system that where spread of hours was calculated wrong. Although Defendants are required to pay a spread of hours premium when an employee worked over 10 hours in a *given day*, Defendants improperly only pay the spread of hour premium when an employee worked over 10 hours in the *same shift*. Thus, when employees work multiple shifts in one workday over the course of a workday longer than 10 hours, Defendants would fail to pay spread of hours for these days. Plaintiff LOJA specifically suffered from this policy, as she would occasionally work two shifts in one day wherein the period of time between the beginning of her first shift and the end of her second shift was more than 10 hours. Despite workday longer than 10 hours, Plaintiff LOJA was not paid any spread of hours premiums. Similarly, FLSA Collective Plaintiffs and Class members were subject to this improper calculation of spread of hours.

50.     Plaintiffs and Class members never received a accurate and proper wage notices from Defendants, as the notices they received would lack information or were not in their primary language as required by law. They also did not receive accurate wage statements from Defendants.

51.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class members at the beginning of their employment with Defendants.

52.     Defendants further violated the WTPA by failing to provide Plaintiffs and Class members with accurate wage statements, which the WTPA requires. *See Rojas v. Splendor Landscape Designs*, Ltd., 268 F. Supp. 3d 405, 413 (E.D.N.Y. 2017) ("Here, it is undisputed that

the wage statements furnished to Plaintiffs were inaccurate in that they did not reflect all of the hours worked by Plaintiffs. Nor did they reflect Plaintiffs' *actual* pay rates.") (emphasis added); *Brito v. Lucky Seven Rest. & Bar, LLC*, 2021 U.S. Dist. LEXIS 55822, at *36 (S.D.N.Y. Mar. 24, 2021) ("And of course, the wage statements are inaccurate more generally in falsely portraying Brito's pay as the product of an hourly, rather than a weekly, wage rate."). The wage statements furnished to Plaintiffs were inaccurate because the wages stated therein did not include proper rate at which Plaintiffs should be paid, and the tips that Plaintiff actually earned. Instead, they reflected the tips Plaintiffs gained minus the amount that was illegally appropriated by Defendants.

53.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

54.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class members. Defendants' conduct actually harmed Plaintiffs and Class members.

Defendants' failure to provide proper wage notices and paystubs listing the proper rates of pay and the actual hours worked, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

55.    Had the wage statements Defendants provided to Plaintiffs and Class members accurately listed the total wages that Plaintiffs and Class members earned, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond to the with the former or (b) forthrightly acknowledge, by way of the wage statement, that the wages received did *not* correspond to the wages that Plaintiffs and Class members earned. Either possibility would have allowed Plaintiffs and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

56.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. This delayed payment caused Plaintiffs and Class members to struggle to pay bills and other debts.

57.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

58.    The direct effect of understating the wages earned on wage statements, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v.*

*Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

59.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

60.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18, (S.D.N.Y. Mar. 7, 2023). "On the other

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

61.    Here, it is clear that Defendants' failure to provide Plaintiffs and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the wages earned been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages paid for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class members. That, in turn, would have increased Plaintiffs' and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

62.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

63.    The case at bar is somewhat different from *Coward* inasmuch as Defendants

actually underpaid Plaintiffs and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

64.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

65.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

66.     Here, the problem is not merely challenging but insurmountable. Plaintiffs and

Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiffs and Class members. The problem, rather, is that Plaintiffs and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

67.    Defendants knowingly and willingly failed to pay Plaintiffs, FLSA Collective Plaintiffs, and the Timeshaved Subclass regular wages for all hours worked due Defendants' time shaving practices.

68.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff QUIRINO, Salaried FLSA Collective Plaintiffs, and Salaried Subclass the proper overtime rate for hours worked in excess of forty (40) in each workweek due to being paid a fixed salary.

69.    Defendants knowingly and willingly failed to pay Plaintiffs and the Class members spread of hours premium for shifts worked in excess of ten (10) hours in duration each workday.

70.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff LOJA, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members the proper minimum statutory wage for all hours worked due to invalid tip credit.

71.    Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities that Plaintiff LOJA, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members are entitled to.

72.    Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

73.    Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under NYLL.

74.    Due to Defendants' FLSA and NYLL violations, Plaintiffs, FLSA Collective Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum and overtime wages, illegally retained gratuities, spread of hours premiums, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the FLSA and the NYLL.

*Plaintiff LUZ LOJA's Discrimination Claim:*

75.    In February 2023, Plaintiff LOJA started to suffer from Defendants' unlawful practice of discrimination based on race and gender. Plaintiff LOJA is Ecuadorian. She was regularly bullied and harassed because of her Ecuadorian features.  For instance, her co-worker, Luis [LNU], would tell her "Ecuadorians has small ass and tits." Plaintiff LOJA started to complain about this to management in or about June 2023. However, Allison [LNU], Plaintiff's new manager, just brushed them off.

76.    Additionally, Plaintiff LOJA was regularly subject to sexual harassment. Her co-workers regularly made derogatory sexual remarks about her body. As illustrated above, her co-workers would always say inappropriate comments about her "ass and tits." Moreover, her co-workers, including Luis [LNU], would regularly make inappropriate comments like "Your face looks like an asshole." Plaintiff LOJA also complained about this to her manager, Allison [LNU], in or about June 2023. Allison [LNU] ignored this issue as well.

24

77.     Defendants created and fostered a hostile working environment for Plaintiff LOJA with this inappropriate behavior of racial discrimination and sexual harassment.

78.     Whenever Plaintiff LOJA complained to Allison [LNU], Allison [LNU] did not do anything about Plaintiff LOJA's complaints. Allison [LNU] did not even attempt to resolve the issues presented to her by Plaintiff LOJA.

79.     After complaining to Allison [LNU], the situation became even worse as Plaintiff LOJA got bullied more by Luis [LNU] and her other co-workers. Again, management did not do anything about this.

80.     Additionally, after complaining, management would pick on Plaintiff for the smallest mistakes even if other co-workers would not be reprimanded for the same mistakes.

81.     A few weeks after complaining, Defendants unlawfully retaliated against Plaintiff LOJA. Plaintiff LOJA was terminated due to "being too slow" even though this was not a problem prior to complaining to the management about being racially discriminated and sexually harassed in the workplace. Due to this, Plaintiff LOJA suffered loss of wages, and extreme physical and emotional distress.

82.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

83.     Plaintiffs reallege and reaver all the foregoing allegations of this complaint as fully set forth herein.

84.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

85.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

86.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

87.     At all relevant times, Defendants willfully violated Plaintiffs and FLSA Collective Plaintiffs rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to timeshaving.

88.     At all relevant times, Defendants willfully violated Plaintiff QUIRINO's and Salaried FLSA Collective Plaintiffs' rights by failing to pay overtime premiums for hours worked in excess of forty (40) each week, due to fixed salary.

89.     At all relevant times, Defendants willfully violated Plaintiff LOJA's and Tipped FLSA Collective Plaintiffs' rights by illegally retaining gratuities that were legally due to the Plaintiff LOJA's and Tipped FLSA Collective Plaintiffs.

90.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

91.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA

as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

92.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

93.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

94.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and unpaid overtime, plus an equal amount as liquidated damages.

95.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

96.     Plaintiffs reallege and reaver all the above allegations of this complaint as fully set forth herein.

97.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

98.     At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiff LOJA and Tipped Subclass members the prevailing New York City minimum wage rate due to Defendants' invalid tip credit.

99.     At all relevant times, Defendants knowingly and willfully operated their business

with a policy and practice of not paying the proper spread of hours premium for each workday that exceeded ten (10) or more hours.

100.    At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of refusing to pay Plaintiffs and Timeshaved Subclass for all hours worked due to timeshaving.

101.    At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of refusing to pay Plaintiffs and Salaried Subclass for all hours worked in excess of forty (40) each work week at the statutory rate of time and one-half the regular rate, due to fixed salary.

102.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of illegally retaining tips due to an invalid tip pooling policy.

103.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to keep track of daily tips earned and maintain records thereof, in direct violation of NYLL.

104.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage and hour notice, at date of hiring and annually thereafter, in direct violation of NYLL.

105.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Tipped Plaintiffs and Tipped Subclass members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

106.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Tipped Plaintiffs and Tipped Subclass Members, as required by NYLL § 195(3)

107.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements with every payment issued to Plaintiffs and Class Members, as required by NYLL § 195(3)

108.    Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid minimum wage, unpaid overtime, unpaid spread of hours premium, illegally retained tips, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

**AGAINST PLAINTIFF LUZ LOJA**

109.    Plaintiff LOJA reallege and reaver all the above allegations of this Class and Collective Action Complaint as is fully set forth herein.

110.    Plaintiff LOJA is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

111.    Defendants violated Plaintiff LOJA's statutorily protected rights under the NYSHRL, New York Executive Law §296, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of her employment and subjecting her to a hostile work environment based on her race or national origin.

112.    Defendants further violated Plaintiff LOJA's statutorily protected rights under the NYSHRL, New York Executive Law §296, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of her employment and subjecting her to a hostile work environment based on her gender. This hostile work environment was created and fostered through

pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff LOJA.

113.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to her termination.

114.    Far from enforcing NYSHRL §296, Defendants affirmatively and unlawfully retaliated against Plaintiff LOJA for calling Defendants' attention to the racial discriminatory remarks and sexual harassment she faced in the work environment. Plaintiff LOJA was terminated after raising such concerns in violation of the NYSHRL.

115.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff LOJA's protected rights under the NYSHRL.

116.    As a result of Defendants' unlawful employment practices, Plaintiff LOJA sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

117.    Due to Defendants' violation under the NYSHRL, Plaintiff LOJA entitled to recover from the Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

**COUNT IV**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**

**AGAINST PLAINTIFF LUZ LOJA**

118.    Plaintiff LOJA realleges and reavers all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

119.    Plaintiff is an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

120.    Defendants violated Plaintiff LOJA's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York §8-107, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of her employment and subjecting her to a hostile work environment based on her race or national origin.

121.    Defendants further violated Plaintiff LOJA's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York §8-107, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of her employment and subjecting her to a hostile work environment based on her gender. This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff LOJA.

122.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff LOJA's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff LOJA, which led to her termination.

123.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff LOJA's protected rights under the NYCHRL.

124.    As a result of Defendants' unlawful employment practices, Plaintiff LOJA sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

125.    Due to Defendants' violations under the NYCHRL, Plaintiff LOJA is entitled to recover from the Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime premiums, due to fixed salary under the FLSA and the NYLL;

d.  An award of unpaid wages, including overtime, due to timeshaving due under the FLSA and the NYLL;

e.  An award of unpaid wages due to invalid tip credit deductions under the NYLL;

f.  An award of unpaid spread of hours premiums under the NYLL;

g.  An award of unlawfully retained gratuities under the FLSA and NYLL;

h.  An award of economic damages, compensatory damages, and punitive damages due under NYSHRL;

i.  An award of economic damages, compensatory damages, and punitive damages due under NYCHRL;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

k.   An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

l.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

m.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

n.   Designation of this action as a class action pursuant to F.R.C.P. 23;

o.   Designation of Plaintiffs as Representatives of the Class;

p.   Payment of a reasonable service award to Plaintiffs, in recognition of the services she has rendered and will continue to render to Class members, and the risks they have taken and will take; and

q.   Such other and further legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Date: January 2, 2025           Respectfully submitted,
      New York, New York    By:  /s/ *C.K. Lee*
                                 C.K. Lee, Esq.
                                 **LEE LITIGATION GROUP, PLLC**
                                 C.K. Lee (CL 4086)
                                 Anne Seelig (AS 3976)
                                 148 W. 24th Street, 8th Floor
                                 New York, NY 10011
                                 Tel.: 212-465-1180
                                 Fax: 212-465-1181
                                 *Attorneys for Plaintiffs,*
                                 *FLSA Collective Plaintiffs*
                                 *and the Class*